Holman v. Higgins.

Mrs. Lizzie M. Holman *v.* Hiram Higgins, *et al.*

(*Nashville.*   December Term, 1915.)

**ALTERATION OF INSTRUMENTS.   Notes.   Filling in date.   Implied authority.**

Where the makers of a note. other than C., for whose benefit it was made, gave it to him to negotiate, with place for the payee's name blank, and the date "July ——," they gave him implied authority, not merely to fill in the name of whoever should become the payee, but the date of the actual delivery to the payee, so long as it was done in a reasonable time, so that filling in such date, September 1st, at his direction, was not an alteration.

Acts cited and construed:   Acts 1899, ch. 94, sec. 125.

Cases cited and approved:   Taylor v. Taylor, 80 Tenn., 714; Crockett v. Thomason, 37 Tenn., 342; Waldron v. Young, 56 Tenn., 777; Michigan Bank v. Eldred, 9 Wall. (76 U. S.), 554; Gill v. Hopkins, 19 Ill. App., 74; Bowers v. Jewell, 2 N. H., 543; Inglish v. Breneman, 5 Ark., 377; Grocery Co. v. Marshall, 131 Tenn., 270; Page v. Morrel, 3 Abb. Dec., 433.

---

FROM LINCOLN

---

Appeal from the Chancery Court of Lincoln County. —Walter S. Bearden, Chancellor.

N. P. Carter and Floyd Estill, for appellant.

Lamb & Lamb and J. E. Routt, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The suit is based on a promissory note. The defense to which is that there was material alteration of the instrument that rendered it unenforceable.

R. W. Copeland, desiring to raise money with which to enter business, prepared a note in the following form, and procured six friends to sign the same with him:

"$1,600.

"Twenty-four months after date I promise to pay to the order of —— the sum of sixteen hundred dollars, for value received. Interest at 6%.

"This July ——, 1910.

                    "R. W. COPELAND.
                    "HIRAM HIGGINS.
                    "S. M. BROGAN.
                    "W. J. STUBBLEFIELD.
                    "C. R. GEORGE.
                    "F. W. GEORGE.
                    "R. A. PITTS."

In August the note in this form was presented by Copeland to one Landess, a son-in-law of complainant Mrs. Holman, desiring to discount it. After conferring with Mrs. Holman as to her having the money to lend and with her lawyer as to the solvency of the signers of the note, Landess, acting for complainant, closed the transaction with Copeland. The latter asked Landess to write in the first blank space the name of complain-

ant as, payee, and that the date of the note be made "September 1st," instead of "July ——," as Copeland wanted, as he explained, to save interest by having the date made that of the note's delivery. This was done by Landess, who then handed the note, as thus completed, to Copeland for his approval. Then, the check of complainant for the loan sum was passed to Copeland and the note to Landess for his mother-in-law.

It is conceded that the filling of the first blank with the name of complainant was authorized, and not an alteration; but it is contended by Higgins and the signers subsequent to him that there was a material alteration made when the word "July" was stricken out and the word "September" written in its place in the date.

According to common-law rules, the date of a note ordinarily fixed the time of maturity or payment, and determined the period of limitation, and therefore any unauthorized change in the date gave the note a new legal effect, and constituted a material alteration. *Taylor* v. *Taylor,* 12 Lea (80 Tenn.), 714; *Crockett* v. *Thomason,* 5 Sneed (37 Tenn.), 342.

Now, by the terms of the negotiable instrument law (Acts 1899, chapter 94, section 125) any alteration which changes the date of a negotiable instrument is a material alteration.

By the provisions of section 6, the validity and negotiable character of the instrument are not affected by the fact that it is not dated; and by section 17(3) where the instrument is not dated, it will be considered to be dated as of the time it was issued.

By section 13 it is provided that where an instrument, expressed to be payable at a fixed period after date, is issued undated, any holder may insert therein the true date of issue, and the instrument shall be payable accordingly. "Issue" means the first delivery of the instrument, complete in form, to a person who takes it as a holder. The note, it might be contended with considerable force, should be treated as complete, as to all essentials of a note, when the first or payee blank was filled; then, the note being undated when issued (the date being blank as above indicated), the act of Landess in filling the date blank should be treated as the act of the payee or holder, if necessary to save the note from an impeachment of alteration. As seen, the right and duty of the holder was to give the true date of issuance.

The theory of the defendants is that, the word "July," having been written in the date line originally, must be treated as a fixed factor, and that Copeland or the holder could only fill the blank left for the day of the month, with some day within the month of July, and that authority to fill blanks extends no further.

Passing without decision the question of the right of the holder, in the circumstances of this case, to give the note the true date of its issuance under section 13, as above suggested, we are of opinion that defendants' insistence is not sound, and that the chancellor erred in sustaining it.

When defendants intrusted the note to Copeland for use in raising money, with the date blank not filled,

they gave implied authority to him to fill the blank as far as it was necessary to perfect it. *Waldron* v. *Young*, 9 Heisk. (56 Tenn.), 777.

Strictly speaking, in such circumstances the filling of a blank is not an alteration of the instrument; the question involved is really one of consent and of authority in the lodgee of the note as agent. Id., 2 Corp. Juris, pp. 1243-1245. And the court should not be disinclined to draw the inference of consent where, in view of apparent authority in such lodgee, a fraud upon an innocent payee or holder would otherwise result.

One of the tests as to such authority by implication is whether the matter inserted causes the instrument as perfected to speak in accord with its intended purpose and use.

Applying these principles, it is manifest, in our view, that the fair inference is that the defendants, by leaving the blank in the date line, consented that Copeland might, in his discretion, give the note the date of its actual delivery to whomsoever might become its payee, when it was to their evident advantage as payors, though in doing so there was involved the change of the word "July" to the word "September." The purpose of defendants was to equip Copeland with funds through the medium of the loan, and they certainly did not anticipate that he would commit them to the payment of interest from a date anterior to his procuring the loan and beginning a use of the funds. The change

of the indicated word, if treated as impliedly authorized, could not be a material alteration.

Let it be assumed that the note with the blanks therein was, after the signatures of defendants had been appended, intrusted to Copeland on July 30th or 31st. Can it be that a change made by him at the time of its discount, if assumed to be on August 1st or 2d, would be beyond the anticipation of the defendants and render the note unenforceable? We think not.

The exact question here involved was decided in the case of *Michigan Bank* v. *Eldred,* 9 Wall. (76 U. S.), 554, 19 L. Ed., 763. There a firm of which defendant Ansen Eldred was a member indorsed and forwarded to F. E. Eldred a series of notes to be used by the latter in raising money for his own use, and one of the notes at that time bore the date line of "Detroit, August ——, 1861"; it evidently being anticipated that the particular note would not be used until that month. The maker, F. E. Eldred, before delivery wrote over the word "August" the word "June," and, as we understand, filled in a blank left for the day of the month. The defense was made that the note had been altered, but the court ruled against it.

Counsel for the defendants in the pending case construe the facts of that case otherwise, and contend that F. E. Eldred first filled in a blank space the word "August," and then later on changed it to "June," but this insistence is in the face of the contention of the counsel of Ansen Eldred in the federal case to the

effect that the note showed on its face that the date was originally ''August.'' The word ''originally,'' in the following quotation from the opinion, is conclusive on the point:

''Reference is made to the fact that the word 'June' is written over the word 'August' in the date of the note, showing that the date orginally was August, instead of June, as it now is; but the conclusive answer to that suggestion is that the maker of the note testifies that he wrote the word 'June' as it now is in the date of the note before he negotiated the note to the plaintiffs, and as he was the agent of the firm in filling up the note, the defendant, as between him and the plaintiffs, has no cause of complaint.''

This is the only case on the exact point that has been cited or found, but see, also, *Gill* v. *Hopkins,* 19 Ill. App., 74, and *Bowers* v. *Jewell,* 2 N. H., 543.

Indeed, it seems that if Copeland had inserted in the blank space admittedly left in the note (payable as it was twenty-four months after date) a date prior to his delivery of the instrument, a serious question would have arisen that the note stood avoided as to defendants. *Inglish* v. *Breneman,* 5 Ark., 377, 41 Am. Dec., 96; S. C., 9 Ark., 122, 47 Am. Dec., 735; Selover on Neg. Inst., p. 21.

Defendants insist that the ruling in the case of *Wood* v. *Steele,* 6 Wall. (73 U. S.), 80, 18 L. Ed., 725, to the effect that there was in that case an unauthorized alteration, was based on facts similar to those appearing in the instant case. We do not so understand, but

gather from the opinion that the change made was not from "September ——," but from "September 11th" to "October 11th," made by alteration before delivery. Ours is the construction given the facts of that case in 2 Daniel, Neg. Inst. (6th Ed.), sec. 1376; and it, furthermore, harmonizes that decision with the later case of *Michigan Bank* v. *Eldred,* supra.

In the case of *Wood* v. *Steele,* therefore, there was a complete date and a complete instrument, and not, as in the later federal case, a blank in the date line giving the lodgee of the note at least apparent authority in the premises.

We are not dealing with a complete note, or with a note changed by the holder after delivery. Our refutation and refusal is of the defendants' proposition that there is here applicable the rule in relation to the alteration of such instruments, made strict on grounds of public policy in order to provide a punishment for the wrongdoer, and to prevent tampering with such paper. *Grocery Co.* v. *Marshall,* 131 Tenn., 270, 174 S. W., 1108. Application is lacking because of authority in Copeland to make the change, implied from the fact that the blank was left which was filled as was anticipated by defendants, and therefore, as consented to by defendants.

A concomitant of the doctrine of implied authority to fill blanks in commercial paper is the application of the principle that when one of two innocent persons must suffer, the loss should fall on that one who reposed confidence in him who perpetrated the wrong.

The contrary may be true where there is an alteration, strictly and properly speaking. Here it is manifest that Mrs. Holman accepted the note from one who had been given apparent authority to discount it in ordinary course of business dealing, by the defendants.

The authority of Copeland as one intrusted by defendants with the possession of the incomplete instrument was limited, as to exercise, to a reasonable time. This was the rule before the statute (2 Corp. Juris, p. 1245), and the Negotiable Instrument Law so provides in section 14. We are of opinion, however, that the period from July to September did not amount to an unreasonable time.

The chancellor erred in dismissing the bill of complaint. Reversed, with decree here for complainant.

### ON PETITION TO REHEAR.

The defendants present a petition to rehear, and cite a *dictum* in the opinion of the lower court in the case of *Page* v. *Morrel,* as reported in 3 Abb. Dec., 433, 436. In the official report of the case in 3 Keyes (42 N. Y.), 117, the above opinion is not incorporated, nor is the *dictum* repeated in the opinion of the court of appeals. That *dictum,* it is claimed, supports the contention of defendants:

"In the case of a note like this one, the year and the month being given, leaving the day of the month only blank, the authority is not entirely unrestricted. It is to be exercised by inserting a date of that month. It

would be an alteration of the instrument to insert a different month or year.''

The change there was from the true date of execution and issuance to one prior to even the note's being signed.

It was upheld by reason of implication of authority, notwithstanding the change was against the interest of the maker and indorsers in the acceleration of maturity, and also, it would seem, against the intent and understanding of the indorsers.

We hold that there was in the instant case authority, by virtue of the blank contained in the date line, to perfect the note, and that perfection, since the negotiable instruments act, consisted in the making the date the true one—the date of issuance—as the one in the contemplation of the parties.

If the contrary be conceded to be true, then we would find the law furnishing the material for the construction of a trap for the unwary person who should discount the note, trusting him whom the defendants trusted and put forward to vend the note. The complainant would lose notwithstanding the note was only made to speak the truth. No one of the defendants testifies that his intentions in this regard were defeated or failed of consummation.

We are unwilling to stretch or apply the doctrine of alteration to release defendants, and set a precedent that will make easy the perpetration of fraud. Petition denied.